**POND CREEK POCAHONTAS
COMPANY, Appellant,**

**v.**

**BREATHITT COUNTY et al., Appellees.**

**James D. FRANCIS et al., Appellants,**

**v.**

**BREATHITT COUNTY et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 20, 1956.

As Extended on Rehearing April 27, 1956.

F. A. MacDonald, Huntington, W. Va., Grannis Bach, Jackson, for appellants.

William S. Riley, Dept. of Revenue, Frankfort, Allie Y. Watkins, County Atty., O. J. Cockrell, Jackson, for appellees.

CLAY, Commissioner.

These cases, consolidated on appeal, involve the validity of increased tax assessments made by the Breathitt County Board of Supervisors. Suits were brought to enjoin the collection of taxes based on these assessments on the ground that they were not made in conformity with KRS 133.120.

While several questions are presented, the issue of notice to the taxpayer is controlling, and the judgment upholding the assessments and denying appellants the relief prayed must be reversed.

Two written notices of proposed increased assessments were served *upon appellants' attorney* by the county tax commissioner and the sheriff of Breathitt County, respectively. This attorney had represented both taxpayers in other tax matters, and the trial court determined that service upon him constituted a legal notice under the statute.

KRS 133.120(1) provides that if the Board of Supervisors determines that an assessment should be increased, the taxpayer shall be given notice as required by KRS 132.450(2).

KRS 132.450(2) provides in part:

"The notice shall be given by registered mail *or as provided in the Civil Code of Practice.*" (Our emphasis).

Since a county board of equalization has a special and limited jurisdiction, its power to increase valuations must be exercised in strict compliance with the statute, and the giving of proper notice is a jurisdictional fact upon which its right to act depends. Ward v. Wentz, 130 Ky. 705, 113 S.W. 892. See also Buckner v. Clay, 306 Ky. 194, 206 S.W.2d 827, and cases cited therein. If the action of the Board is void for want of jurisdiction, clearly it may be attacked in a suit of this sort to enjoin the collection of the tax based on the increased assessment. See cases just cited.

We have before us a question of construction. The optional requirement of KRS 132.450(2) that notice shall be given "as provided in the Civil Code of Practice" must now be read "as provided in the Rules of Civil Procedure". KRS 446.180(2). Our problem is to determine *which* provisions of the Civil Rules are applicable. Specifically, shall notice be given (i. e., served) as a *summons* under Civil Rule 4 (particularly Rules 4.01 and 4.04) or as *notices generally* under Civil Rule 5.02. In passing upon this question, the history of the notice provisions of the statute is of significance.

Under Section 4122 of Carroll's Kentucky Statutes (1936 Revision), the legislature had spelled out in detail the method of serving the notice. It provided that the sheriff should notify the taxpayer in one of several different ways, including the use of first-class mail in the case of nonresidents. In 1942 the statute was amended, and Section 16 of Chapter 131 of the Acts of 1942 provided that the notice shall be served "in the manner in which sum-

mons are required by the Civil Code of Practice to be served by the sheriff." This amendment shows an intention upon the part of the legislature to require a more certain way of bringing home to the taxpayer notice of the increased assessment.

In Burke v. Department of Revenue, 293 Ky. 281, 168 S.W.2d 997, in construing the 1942 Act, the Court recognized the practical difficulties of serving notice as a summons in all instances, and declared the legislature must have intended that it could be served as other notices under the Civil Code when the taxpayer absented himself from the county, or concealed himself, or could not be served personally after diligent effort. This interpretation of the 1942 Act may well have influenced the legislature to enact the provision of the present statute (enacted in 1949) with respect to notice. We may go so far as to say the legislature apparently intended that in addition to service by registered mail, the notice could be served as other notices under the provisions of Section 625 of the Civil Code.

In view of this prior construction of the Act, coupled with the fact that in the present statute no reference to a "summons" appears, it is apparent the legislature had in mind the giving of notice as prescribed by Section 625 of the Civil Code. We therefore conclude that by virtue of KRS 446.180(2), above discussed, notice may be given under the tax statute in the manner now permitted by Civil Rule 5.02.

While the question is not here immediately involved, we deem it proper to point out that one phase of the new procedure is not applicable under KRS 132.450(2). CR 5.02 is substantially the same as Section 625 of the Code insofar as here pertinent, with one noticeable exception. Under CR 5.02 service is authorized by ordinary mail. This particular method of service is in clear conflict with the provision of the statute that mailed notice must be by *registered mail.*

As mentioned above, KRS 446.180(2) in effect substitutes "Rules of Civil Procedure" in a statute referring to the "Civil Code of Practice." However, this general provision must likewise be construed in the light of its purpose. If the new procedure in the Civil Rules effects a material change inconsistent with a specific provision of the statute which refers to them, the particular new procedure should not be held to apply to the extent it requires a different course of action.

The statute we have under consideration requires registered mail if this method of giving notice is to be followed. General reference to optional methods of service surely does not emasculate the specific provision. We are convinced that the proper construction of the statute is that the provisions of the Civil Rules with respect to serving notice shall apply to the extent they do not conflict with the particularized method set forth in this statute. We conclude, therefore, that a proper notice under this statute may be served in the manner provided by CR 5.02, with the qualification that mailed notice must be by *registered mail.*

Having determined the manner of service, our final question concerns the person upon whom it may be served. It seems clear to us that in a proceeding of this sort the service must be upon the taxpayer, not upon his attorney as was here attempted.

It is true that CR 5.02 provides that if a party is "represented by an attorney," service shall be upon him. It is, of course, the contention of appellees that appellants had been represented by an attorney, and therefore service upon him was proper. However, this overlooks the type of representation to which CR 5.02 must necessarily relate. The Rule contemplates that the attorney is the representative of the party *in the particular proceeding then pending.* It presupposes jurisdiction has been obtained over the party. See Moore's Federal Practice (2d. Ed.), Vol. 2, Sec. 5.04.

As before discussed, the Board has no jurisdiction to act under the statute until *after* the taxpayer has been given

notice in the manner prescribed. Until the proceeding has been properly commenced, appellants could not be represented by an attorney in such proceeding. The fact that appellants' attorney had represented them generally or specifically in other litigation and proceedings is immaterial. That relationship alone did not constitute him a proper agent upon whom the notice could be served.

Service upon appellants' attorney would have been valid as to appellants only if he was their agent authorized to receive service on their behalf. There is no evidence in this record that he was such an agent. Consequently, the notice required by the statute was not given and the Board of Supervisors had no authority to increase the tax assessments.

█ It is contended by appellees that even if notice was not properly given, the taxpayers are bound because they had actual knowledge of the proceedings and their attorney made inquiries in connection therewith. Admitting this to be true, neither the taxpayers nor their attorney at any time entered an appearance in the proceedings. Not having done so, they did not waive the right to insist that the Board of Supervisors had not obtained jurisdiction over them which would justify the increase in their tax assessments. Ward v. Wentz, 130 Ky. 705, 113 S.W. 892, (heretofore cited).

Another question is presented on this appeal concerning the right of the county clerk to increase the proper assessments against appellants' property by 15 percent as prescribed by the Kentucky Tax Commission. KRS 133.150 authorizes the Commission to equalize assessments among counties. Under that statute the Commission increased the assessments in Breathitt County for the year 1954 by 50 percent "on town lots and improvements" and 15 percent on "farm lands and improvements".

It is appellants' contention that their real estate, including improvements thereon, is mining property and does not fall within either of the two categories specified by the Tax Commission.

█ The record indicates, and we could perhaps take judicial notice of the fact, that most of the land in Breathitt County is not suitable for farming on any appreciable scale. If the phrase "farm lands" was construed in a narrow sense, the blanket increase of 15 percent on real estate in Breathitt County would be negligible. Considering the general topography of Breathitt County, the nature of the directive of the Kentucky Tax Commission, and the purpose of the blanket assessment, we are of the opinion that the term "farm lands" was used in a broad generic sense to include all lands in the county other than "town lots". Likewise the term "improvements" includes all improvements on the land whether or not they were used for farming or other purposes.

█ We therefore conclude that the proper assessed valuation of the mining properties and improvements of appellants was, for the year 1954, subject to the 15 percent increase directed by the Kentucky Tax Commission.

For the reasons given, the Chancellor should have adjudged appellants entitled to relief from the increase in valuation ordered by the County Board of Equalization, but properly denied them exoneration from the 15 percent increase directed by the Kentucky Tax Commission.

The judgment is reversed for consistent proceedings.